UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

| | |
|---|---|
| **SHERRY SPADE** | **CASE NO. 6:24-CV-129-KKC** |
| **Plaintiff,** | |
| v. | **OPINION and ORDER** |
| **APPALACHIAN REGIONAL HEALTHCARE, INC.,** | |
| **Defendant.** | |

\*\*\* \*\*\* \*\*\*

This matter comes before the Court on Defendant Appalachian Regional Healthcare, Inc.'s ("ARH") Motion for Summary Judgment (R. 25). Now that this matter is fully briefed, it is ready for review. For the following reasons, ARH's Motion is GRANTED.

### I. FACTUAL BACKGROUND

This case concerns the employment and eventual termination of Plaintiff Sherry Spade. In August 2013, Spade was hired by ARH at their Middlesboro, Kentucky medical facility. (R. 27 at 2.) At the beginning of her employment, Spade received training on ARH's policies. (R. 25-9 at 2.) These policies included HIPAA compliance policies, code of conduct, guidelines for conduct, and confidentiality policy. (*Id.*) On August 12, 2013, Spade signed the "Acknowledgement and certification – CCRAO section of Orientation" which confirmed that she "attended an orientation session that included HIPPA [*sic*], ARH Compliance program, and ARH Standards of Conduct." (R. 25-1 at 2.) She further acknowledged that compliance with ARH policy was a condition of her employment. (*Id.*) Under ARH's HIPAA policy, Spade was not to "use or disclose protected health information unless such use or disclosure is either permitted or required by HIPAA." (R. 25-9 at 3.)

As a condition of her employment, Spade was also required to complete annual trainings which included HIPAA compliance training. (R. 28 at 2.) Lisa Dray, Spade's immediate supervisor, and Melissa Barnes, the Human Resources Manager, both confirmed that Spade completed her annual trainings. (*Id.*) ARH provides evidence of Spade's singed "Policy Acknowledge [*sic*] and Acceptance" dated January 6, 2020. (R. 25-2 at 2.) By its own terms, that acknowledgment confirms that Spade was aware of the content, requirements, and expectations of ARH's policies. (*Id.*)

In 2022, Spade was promoted to Financial Counselor at Middlesboro ARH. (R. 27 at 2.) Spade received high remarks on her 2022 performance evaluation and was never disciplined prior to her termination. (*Id.*) In fact, Dray noted on Spade's performance evaluation that Spade is an "Amazing Employee" and that she was "Blessed to have Sherry on my team!!" (*Id.*)

In February 2023, Spade sustained a foot injury after falling at work. (*Id.*) As a result, she filed a workers' compensation claim as she had to miss work for several months. (*Id.*) This was not the only time that Spade had to take leave; in 2021 she filed a workers' compensation claim for a different injury. (R. 25-9 at 2.) Spade did not return to work until June 26, 2023. (*Id.*) During her time off, Spade's job was held open for her, and no one was hired in her place. (R. 25-9 at 4.) When Spade returned to work, she was still recovering from the injury. (R. 27 at 3.) This caused her to miss work on August 4, 10, 11, and 14, 2023, for continued medical treatment. (*Id.*)

On July 28, 2023, just over a month after Spade had returned to work, a 17-month-old toddler was brought to Middlesboro ARH with significant injuries allegedly from severe abuse. (R. 27 at 4.) Unfortunately, the toddler died from his injuries. (*Id.*)

2

Shortly after the toddler died, someone told ARH that sensitive information from the toddler's medical records had been leaked onto Facebook. (*Id.*) ARH conducted an audit to see who accessed the toddler's records. (*Id.*) The audit revealed that dozens of employees accessed the toddler's records between July 28, 2023, and August 3, 2023. (*Id.*) ARH then questioned 13 individuals including Spade to consider whether they had a valid reason for accessing the toddler's medical chart. (*Id.*) Spade admits she had no legitimate business reason for viewing the records and maintains that she only opened his file to pray over them. (*Id.*) ARH then held a meeting with members of its corporate and legal team in which it decided that 11 individuals would be disciplined for unauthorized access of the toddler's medical records, which was a violation of HIPAA and company policy. (*Id.* at 5.)

On August 15, 2023, Spade was called into a meeting with ARH supervisors Barnes, Dray, and Corey Eldridge. (*Id.*) Spade was informed that she was being suspended for five days with the intent to terminate her. (*Id.*) Spade was subsequently terminated on August 23, 2023. (*Id.*) ARH's stated reason for the termination was violation of HIPAA and ARH policy. (*Id.*) Of the 11 individuals who were disciplined, only Spade and two others were terminated. (*Id.*) The remaining employees received either a three-day suspension or a five-day suspension accompanied by a last-chance agreement. (*Id.*)

On August 16, 2024, Spade filed the present matter in Bell County Circuit Court asserting claims under KRS § 342.197 and for retaliation under the Family Medical Leave Act, 29 U.S.C. 2601, et seq., ("FMLA"). (R. 1-1.) ARH removed the matter to this Court on September 9, 2024. (R. 1-5.) Upon the close of discovery, ARH filed the present motion for summary judgment. (R. 25.)

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

3

Fed. R. Civ. P. 56(a). The moving party bears the initial burden and must identify "those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and quotation marks omitted). All evidence, facts, and inferences must be viewed in favor of the nonmoving party. *See McLean v. 988011 Ontario, Ltd.,* 224 F.3d 797, 800 (6th Cir. 2000). "In order to defeat a summary judgment motion, . . . [t]he nonmoving party must provide more than a scintilla of evidence," or, in other words, "sufficient evidence to permit a reasonable jury to find in that party's favor." *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

### III. ANALYSIS

ARH moves for summary judgment arguing that its termination of Spade did not violate the FMLA or KRS § 342.197 because she was fired for a legitimate business reason. (R. 25-9 at 1.) In response, Spade argues that ARH's proffered reason for termination was pretextual. (R. 27 at 10.)

**A. FMLA interference**

Count II of Spade's Complaint is listed as "FMLA RETALIATION/INTERFERENCE." (R. 1 at 5.) The Sixth Circuit recognizes "two discrete theories of recovery under the FMLA: (1) the so-called 'interference' or 'entitlement' theory arising from § 2615(a)(1), and (2) the 'retaliation' or 'discrimination' theory arising from § 2615(a)(2)." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012). An interference claim arises when an employer hinders an employee's right to take leave, while a retaliation claim relates to an employer's discrimination of an employee who took leave. *Id.*; *compare* § 2615(a)(1), *with* § 2615(a)(2).

Spade has not put forth any evidence that ARH interfered with her right to take leave. In fact, the parties' briefings solely focus on the retaliation issue. Accordingly, to the extent

4

Spade asserts an interference claim under the FMLA, summary judgment is granted in ARH's favor.

### B. FMLA Retaliation

The FMLA prohibits an employer from retaliating against an employee who takes leave under the FMLA. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006). In FMLA retaliation cases, courts apply the three-step *McDonnell Douglas* burden-shifting framework. *See Skrjanc v. Great Lakes Power Sev. Co.*, 272 F.3d 309, 315 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Under the *McDonnell Douglas* framework, Spade must first prove a prima facie case of discrimination. *Id.* at 802. The burden then shifts to ARH to articulate a legitimate, nondiscriminatory rationale for the discharge. *Id.* at 802–804. If ARH articulates a legitimate reason, the burden shifts back to Spade to show that the reason is in reality a pretext to mask discrimination. *Id.* at 804–806.

#### i. Spade presented a prima facie case of retaliatory discharge

To make out a prima facie case of retaliation, Spade must show that (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Redlin v. Grosse Pointe Public Sch. Sys.*, 921 F.3d 599, 616 (6th Cir. 2019) (quoting *Donald v. Sybra*, 667 F.3d 757, 761 (6th Cir. 2006)).

ARH does not contest the first three elements. There is no question that Spade engaged in a protected activity by filing a workers' compensation claim and suffered an adverse employment action as she was terminated. Instead, ARH challenges whether Spade can prove causation. (R. 25 at 9.)

The causation element often turns on the temporal proximity between the protected activity and the adverse employment action. *See Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 409 (6th Cir. 2014) (citing *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283–84 (6th Cir. 2012)) (Indeed, "the causal connection between the protected activity and the adverse employment action necessary for a prima facie case of retaliation can be established solely on the basis of close temporal proximity."); *Seeger*, 681 F.3d at 283–284 (quoting *DiCarlo v. Potter,* 358 F.3d 408, 421 (6th Cir. 2004)) ("[T]his Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise."); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.").

ARH argues that Spade's temporal proximity argument fails because she was terminated six months after her injury. (R. 25-9 at 9.) However, for purposes of assessing temporal proximity, the relevant date is when the employee's FMLA leave expired, not when it was first requested. *Clark v. Walgreen Co.*, 424 F. App'x 467, 473 (6th Cir. 2011). In this case, Spade returned to work on June 28, 2023. She was fired less than two months later on August 23, 2023. The Sixth Circuit has found sufficient evidence of a causal connection where the time between the employee's return from leave and termination was two to three months. *Id.* at 473 ("[T]he court correctly credited the temporal proximity [two months] of [the plaintiff's] leave and his firing as sufficient evidence of a causal connection between the two. Our precedents stand for the principle that timing matters."); *Bryson v. Regis Corp.*, 498

6

F.3d 561, 571 (6th Cir. 2007) (holding that a causal connection at the prima facie stage was established by the three months that passed between the plaintiff's request for FMLA leave and her termination on the day she was scheduled to return to work).

Spade presented evidence that the firing came less than two months after she returned to work, and the day after she had to take a day off for medical treatment. Because the "burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). Accordingly, the Court finds that Spade presents a prima facie case of FMLA retaliation.

### ii. ARH had a legitimate and nondiscriminatory reason for terminating Spade

Because Spade has established a prima facie case of FMLA retaliation, the burden now shifts to ARH to identify a non-discriminatory reason for its actions. At this stage, The defendant "bears only the burden of production; the burden of persuasion remains with [Plaintiff] at all times." *Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 377–78 (6th Cir. 2002).

ARH satisfies its burden. It contends that its only reason for firing Spade was because she violated HIPAA and ARH policy. (R. 25-9 at 9.) This fact is not in dispute. Spade admitted to accessing the infant's medical records without a valid reason. (R. 27 at 4.) Firing an employee for violating a workplace policy and HIPAA is a legitimate nondiscriminatory reason.

Spade argues that "at the time she accessed the chart, Spade did not believe her conduct was improper and she had never previously been in trouble for violating HIPAA. There is no evidence to refute her claims." (*Id.*) This statement, even if taken as true, is

7

immaterial to the analysis. The plaintiff's knowledge of violating HIPAA or ARH policy is not a legal requirement to proving a FMLA retaliation claim. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001) (explaining the requirements to prove retaliation under the FMLA). The analysis focuses on the defendant's conduct, not the plaintiff's. The burden remains on Spade to demonstrate that ARH's stated reason for terminating her was not legitimate. *Weigel*, 302 F.3d at 377–78. Merely asserting that she had never been disciplined before or that she was unaware her conduct violated HIPAA does not constitute sufficient evidence to rebut ARH's nondiscriminatory explanation. Accordingly, ARH has satisfied its burden of production at this stage, and the burden shifts back to Spade to show pretext.

### iii. Spade has not offered sufficient evidence that ARH's stated reason was pretextual

The burden of production now shifts back to Spade to offer evidence from which a reasonable jury could conclude by a preponderance of evidence that ARH's reason for terminating her is pretextual. *Cantrell v. Nissan N. Am. Inc.*, 145 F. App'x 99, 106–107 (6th Cir. 2005) (internal quotation marks omitted).

First, Spade does not present sufficient evidence to prove that the temporal proximity between her return from leave and termination establishes pretext. Unlike its the role in a plaintiff's prima facie case, the Sixth Circuit is clear that "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual." *Skrjanc*, 272 F.3d at 317; *see also Seeger*, 681 F.3d at 285 (quoting *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012)) ("Unlike its role in establishing a prima facie case, 'the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext.'"). Therefore, Spade must rely on more than timing alone to establish pretext.

8

In this regard, the Sixth Circuit has recognized three primary methods for a plaintiff to demonstrate pretext; showing that the defendant's reasons "(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Seeger*, 681 F.3d at 285 (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). Spade, however, does not specifically identify which of these method(s) she contends establishes pretext in her case.

The Sixth Circuit's decision *Manzer v. Diamond Shamrock Chemicals Co.* explains in detail the three methods by which a plaintiff may demonstrate pretext:

> The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.*, that they are "factually false." (citation omitted). The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employee's proffered motivation for firing plaintiff . . .
>
> The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.

29 F.3d 1078, 1084 (6th Cir. 1994) (overruled on other grounds by *Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009)) (emphasis in original).

The first method, demonstrating that ARH's proffered reason has no basis in fact, does not apply here. Spade admits that she opened the toddler's medical chart in violation of ARH policy and HIPAA. (R. 27 at 4.)

9

Spade also fails to produce sufficient evidence under the second method. To prevail under this theory, Spade must present evidence of discrimination that makes it "more likely than not" that the employer's stated reason is pretextual. *Manzer*, 29 F.3d at 1084.

To this end, Spade argues that because ARH did not identify the specific decisionmakers who terminated her, its claim that she was terminated solely because of her HIPAA violations is "pure speculation." (R. 27 at 10.) This argument is unavailing. ARH need only produce a legitimate nondiscriminatory reason for terminating Spade, for which it did. The burden of persuasion is on her to prove that the reason was pretext. *Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 377–78 (6th Cir. 2002). ARH produced an official, written termination letter that specifically stated she was being fired for "violation of ARH Policies and Procedures, including HIPAA." (R. 27-4 at 1.) ARH does not dispute the validity or effect of its termination letter. Simply calling into question the individual who made the decision does not undermine ARH's proffered nondiscriminatory reason, nor does amount to sufficient evidence of pretext.

Further, it is undisputed that Spade opened the toddler's medical file. (R. 27 at 4.) Although it is unclear whether Spade expressly concedes that such conduct could motivate dismissal, the undisputed evidence in the record reflects that compliance with ARH policy and HIPAA was a "condition of employment." (R. 25-1 at 2.) In fact, there is evidence that two other employees were fired for violating HIPAA. (R. 27 at 10.) On this evidence, no reasonable jury could conclude that terminating Spade for taking FMLA leave was "more likely" than ARH's proffered reason that she was fired for violating HIPAA and company policy. *Manzer*, 29 F.3d at 1084.

The third method for demonstrating pretext requires Spade to prove, by a preponderance of evidence, that her conduct was insufficient to warrant termination. *Seeger*, 681 F.3d at 285; *Cantrell*, 145 F. App'x at 106–107. The undisputed facts reveal that Spade's

10

actions were sufficient to warrant termination. Maintaining confidentiality of patients' medical records is extremely important, which is why companies like ARH have policies requiring HIPAA compliance. In fact, Spade agreed to be bound by the policies that support her termination. (R. 25-9 at 2.) ARH contends that Spade was an at-will employee, meaning she could be terminated with or without cause. (*Id.* at 10.) Moreover, ARH maintains that her termination for violating HIPAA was independently valid. (*Id.*) Spade provides no evidence countering these arguments. (*See id.* at 11.) The record reflects that ARH had legitimate grounds to terminate her for breaching company policy and HIPAA, both of which were express conditions of her employment. (*See id.* at 2.) Accordingly, her violation of company policy and HIPAA cannot be considered "insufficient to warrant the challenged conduct," because her job was expressly conditioned on compliance with ARH policy. *Judge*, 592 F. App'x at 410; R. 25-9 at 2.

Spade attempts to circumvent this outcome by arguing that ARH did not impose the same discipline on other similarly situated employees who engaged in "substantially identical conduct" as her. (R. 27 at 11 (citing *Turner v. Marathon Petroleum Co.*, 804 Fed. App'x. 375, 378 (6th Cir. 2020).)

The Sixth Circuit recognizes a theory under which a plaintiff can show that the conduct at issue was insufficient to justify termination by demonstrating that other employees engaged in "substantially identical conduct" were not fired. *Russell v. Univ. of Toledo*, 537 F.3d 596, 607 (6th Cir. 2008). Such a showing "ordinarily[ ] consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Id.* (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998)).

11

For conduct to be "substantially identical," the employee(s) who the plaintiff uses as a comparison "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Spade presents evidence that 11 individuals were investigated for improperly accessing the toddler's medical records. (*Id.* at 11.) Of the three that were fired, one was the cause of the leak, as she shared confidential information to friends and family, which was later posted to Facebook. (*Id.* at 6.) The other terminated employee had an extensive history of HIPAA violations. (*Id.*) In contrast, the record reflects that Spade has a clean disciplinary history. (*Id.* at 12.)

Even if Spade could establish that her actions were the "least objectionable," she offers no evidence demonstrating how her conduct was "substantially identical" to that of the employees who were not terminated. (R 27 at 11; *Manzer*, 29 F.3d at 1084.) She has not produced evidence that the other employees dealt with the same supervisor. *Russell*, 537 F.3d at 607. Although there is evidence that all employees were subject to the same standards (*see* R. 25-5 at 2 (noting that the conduct guidelines apply to "all ARH employees")), it remains unclear whether Spade and the other employees who accessed the toddler's chart engaged in the "same conduct." *Russell*, 537 F.3d at 607.

Viewing the facts in a light most favorable to Spade, she accessed the files one time, briefly, only to pray over them. (R. 27 at 12.) Even assuming this amounts to the "same conduct" as all the employees who were not fired, Spade still fails to meet her burden of showing "differentiating or mitigating circumstances that would distinguish her conduct or the employer's treatment of them for it." *Russell*, 537 F.3d at 607. The only argument she

12

advances is that "simply accessing the records was not automatic grounds for termination and demonstrates that ARH considered additional information when deciding what discipline to administer." (R. 27 at 11.) Even if true, this contention does not identify what "differentiating or mitigating circumstances" justified ARH's decision to terminate some employees but not others. *Mitchell*, 964 F.2d at 583. Moreover, the only employees to whom she compares her conduct were also terminated for the same reason she was. (*See* R. 27 at 5–6.) Accordingly, there is insufficient evidence for a reasonable jury to conclude that Spade's conduct was, by a preponderance of evidence, "substantially identical" to that of employees who were not fired. *Cantrell v. Nissan N. Am. Inc.*, 145 F. App'x 99 (6th Cir. 2005); *Russell*, 537 F.3d at 607.

Because the Court concludes that Spade has failed to produce sufficient evidence of pretext under any of the applicable theories, summary judgment in favor of ARH is warranted.

### C. KRS § 342.197 Workers' Compensation Retaliation Claim

Count I of Spade's complaint asserts that she was terminated in retaliation for filing a workers' compensation claim in violation of KRS § 342.197. (R. 1-1 at 3.) ARH contends that Spade's workers' compensation retaliation claim fails for the same reasons as her FMLA claim. (R. 25-9 at 11.)

The factors to establish a claim under KRS § 342.197 are nearly identical to that of proving a FMLA claim. To this end, an employee must show that (1) she participated in 'a protected activity,' (2) the employer 'knew' that the employee had done so, (3) the employer took an 'adverse employment action' against the employee, and (4) 'a causal connection' existed between the two." *Witham v. Intown Suites Louisville Ne., LLC*, 815 F.3d 260, 263 (6th Cir. 2016) (quoting *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 916 (Ky. Ct. App. 2006)).

13

Like an FMLA claim, a workers' compensation claim also implicates a burden-shifting framework. If the employee can establish all four prima facie elements, then the burden shifts to the employer to identify "a non-retaliatory reason for the adverse employment decision." *Upchurch*, 214 S.W.3d at 916. If a non-retaliatory reason can be shown, then the employee "may still succeed by showing the proffered reasons were nothing but 'a pretext' for retaliation." *Witham*, 815 F.3d at 263 (citations omitted).

Spade argues that the FMLA and workers' compensation retaliation claims should be "similarly analyzed." (R. 27 at 7.) ARH agrees. (R. 25-9 at 10; s*ee Witham v. Intown Suites Louisville Ne., LLC,* 815 F.3d 260, 263 (6th Cir. 2016) (listing the elements for a worker's compensation claim under KRS § 342.197 which are substantially similar to the FMLA elements); *Kentucky Center for the Arts v. Handley*, 827 S.W.2d 697, 701 (Ky. Ct. App. 1991) (noting that Kentucky applies a modified version of the *McDonnell Douglas* burden-shifting scheme to retaliation claims).)

The Court has already found that Spade presents a prima facia case, ARH proffered a legitimate nondiscriminatory reason, and Spade failed to produce sufficient evidence that ARH's stated reason was pretextual. *Supra* §III.B. Spade has presented no evidence distinguishing her workers' compensation retaliation claim under KRS § 342.197 from her FMLA retaliation claim. To the contrary, she asserts that both claims should be analyzed identically. (R. 27 at 7.) Because Spade presents no additional evidence to support a violation of KRS § 342.197, ARH is entitled to summary judgment on this claim.

### IV. CONCLUSION

Accordingly, the Court hereby ORDERS that ARH's Motion for Summary Judgment (R. 25) is GRANTED. The Court will enter a judgment consistent with this opinion.

This 11th day of March, 2026.



**Signed By:**
*Karen K. Caldwell*
**United States District Judge**